Fresbel Restaurant Corp. v. Commissioner.
Fresbel Restaurant Corp. v. Commissioner
Docket No. 43846.
United States Tax Court
T.C. Memo 1954-173; 1954 Tax Ct. Memo LEXIS 73; 13 T.C.M. (CCH) 957; T.C.M. (RIA) 54279; October 13, 1954, Filed *73 Allen Ducker, Esq., and Samuel Feldman, Esq., 1775 Broadway, New York, N. Y., for the petitioner. James J. Quinn, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in income tax of $6,299.08 for the taxable year ended February 28, 1946. The issues for decision are: (1) Whether the Commissioner erred in disallowing a net operating loss carry-over deduction of $4,670.73 resulting from reported net operating losses for the fiscal years ending February 29, 1944 and February 28, 1945. (2) Whether the Commissioner erred in disallowing cash purchases of $5,000 and general expenses of $764.77 as unsubstantiated. (3) Whether the Commissioner erred by increasing the valuation of notes received by petitioner on the sale of its assets to an amount equal to the face value of the notes in determining gain on the transaction rather than accepting petitioner's claimed valuation of 50 percent of their face value. Other adjustments were either not contested or no evidence was introduced thereon and are treated as having been abandoned by petitioner. Findings of Fact Petitioner is a corporation *74 organized under the laws of the State of New York. Its income tax returns for the taxable years were filed with the collector of internal revenue for the third district of New York. During the taxable years petitioner operated a restaurant and luncheonette at 303 West 125th Street, New York in the Harlem area. A "continuation audit" or write-up of petitioner's books during the period petitioner was in business was made by a certified public accountant who at the time of the hearing had an experience of 18 years. Petitioner's books consisted of a general ledger, a cash book, a trial balance book and a journal. Basic daily records consisting of cash register tapes and cash purchase invoices were kept by officers or employees of petitioner. Each week these daily records were turned over to the accountant or one of his employees who verified the items and entered them on petitioner's books. The basic daily records were left with a corporation which purchased petitioner's assets in June 1945 and were not exhibited to the revenue agent who audited petitioner's tax returns for the taxable years. In view of this and the fact that substantial amounts of cash purchases were involved, *75 the agent disallowed enough of the cash purchases and general expenses claimed by petitioner in each year so that the resulting income would be the same as if petitioner had done business on a 50 percent gross profit margin. The agent employed this gross profit margin after referring to the returns of about eight other restaurants he had audited and gathering information from persons in the restaurant field. It was not shown that the other restaurants audited were comparable to petitioner either as to the area served or the method of service. This disallowance resulted in wiping out the claimed net operating losses for the fiscal years ending in 1944 and 1945. Petitioner's cash purchases and general expenses were accurately reflected on its books and properly reported on its income tax returns for the taxable years ending February 29, 1944, February 28, 1945 and February 28, 1946. Petitioner had net operating losses of $2,739.01 and $1,931.72 in its fiscal years ending February 29, 1944 and February 28, 1945, respectively. On June 11, 1945, petitioner sold its assets to Six Star Restaurant Corporation for $50,000, payable as follows: $20,000 in cash and $30,000 evidenced by *76 thirty $1,000 notes in series secured by a chattel mortgage. Seven of the notes were turned over to a broker as his commission. Within a short time after the sale the purchaser began experiencing financial difficulties and mismanagement and petitioner agreed to accept payment of 50 percent of the face value of the notes in full settlement. Petitioner never received any more than the 50 percent so agreed upon. The Commissioner determined the notes had a fair market value equal to their face value. The notes received by petitioner had a fair market value of 50 percent of their face value at the time of the sale. Opinion The questions before us are factual. Petitioner has the burden of proof and, despite the presumption of correctness which attaches to the Commissioner's determination, we are satisfied petitioner's burden has been met. This is reflected in our findings of fact. We conclude that petitioner's records accurately reflect the cash purchases and general expenses of its business in the taxable year and that petitioner properly claimed net operating losses for the two fiscal years preceding the year before us. Further, we find that the notes received by petitioner *77 in the transaction involving the sale of its assets had a fair market value of no more than 50 percent of their face value, or $11,500. Decision will be entered under Rule 50.